JAMES C. SHERIDAN and another *vs.* DAN. CARPENTER.

*Note, construction of. Money had and received, when it lies.*

A note signed "A. B., Treas. for St. Paul's Parish," is the note of the parish. A material alteration of a note, in the hands of an indorsee, without the knowledge of the indorser, discharges the latter.

An indorser, ignorant of facts accruing subsequently to his transfer of the indorsed note which operate to discharge him from liability thereon, paying its amount to the holder, upon discovery of such facts, can recover the sum so paid in an action for money had and received.

An offer to return the note to the defendant, made at the trial, is sufficient.

ON EXCEPTIONS to the ruling of Goddard, J., of the superior court of this county.

Assumpsit, to recover $372 paid defendant under mistake of facts. Plaintiffs were indorsers of a note by them transferred to defendant, which, at the time of such transfer was signed thus: " John T. Hull, Treasurer of St. Paul's Parish."

Some time after its purchase by defendant, but before its maturity, Mr. Hull called at defendant's office and asked to see the note, which was handed him. Hull swears that, looking at it, he remarked to defendant: " I understand, the way this is written, it is not a parish note ; if you will allow me to alter it, to make it as it should be, I will do so." That defendant replied, " I want it right;" and thereupon Hull altered it by making the word "of" in the signature into the word "for," and adding at the end of the

word "parish" the words "duly authorized," so that the signature was thus made to read, "John T. Hull, Treasurer for St. Paul's Parish, duly authorized."

Carpenter testified that Hull, after taking the note, said nothing, but altered it without his knowledge or consent. At maturity the note was dishonored, the parish being insolvent, and suit was brought by Carpenter against plaintiffs, by writ from this court, 1870, which was settled Nov. 28, 1870, by payment of $372 for note, interest, and costs, by plaintiffs to defendant's attorneys. At the trial plaintiffs' attorneys tendered defendant the altered note, which they had not done before.

Touching controverted questions of facts, the judge of the superior court found as follows:

That defendant never informed plaintiffs, or either of them, of the alteration made by Hull, and that plaintiffs paid defendant the $372 Nov. 28, 1870, without any knowledge or suspicion that any alteration had been made.

That St. Paul's Parish was, at the time of the alteration, hopelessly insolvent and bankrupt, and that its condition was at that time well known to Hull, the treasurer, but was unknown to plaintiffs, or to Carpenter.

"And the evidence in the case, and particularly that of Hull, satisfies me that after Hull signed the note in question, and before he altered it, he had ascertained that he was in danger of being held personally liable at law on notes similar in form to the one in question (whereof he had put large numbers in circulation); that his sole design in calling on defendant was to effect an escape from such danger; that his language to defendant was carefully contrived so as to awaken defendant's apprehensions that there might be a technical defect in the note, or signature, which was liable to defeat the defendant's security, and thereby to induce defendant to consent to the change therein proposed by Hull for the ostensible purpose of strengthening defendant's security, but which had the precise effect desired and contemplated by Hull, and studiously concealed by him from defendant, viz.: Hull's exoneration from

the legal risk apprehended by him; that Hull well knew that defendant's consent could not be obtained except by a concealment of his (Hull's) main purpose, and for that reason, and with that design, the more effectually concealed that purpose, by the profession of an anxiety on his part to render defendant more secure; that by said concealment, contrivance, and misrepresentation, Hull did obtain defendant's consent to said alteration, neither defendant, nor either of the plaintiffs, having at that time any knowledge or suspicion of Hull's real purpose."

That at the time of the negotiation of the note by plaintiffs to defendants, neither of them knew of the insolvency of St. Paul's Parish, and all supposed it was a parish note, good only against the parish, and Hull so supposed when he gave it; " but I do not find whether, at the time Hull gave the note, he knew of the insolvency of the parish, although I am strongly inclined to that opinion."

"And I find that the consent of the defendant to the alteration of the note was fraudulently obtained by Hull, so far as it is a question of fact, that is to say, I find that Hull's conduct, in my opinion, so far as the question is one of fact, amounted to fraud in this, that while Hull so skillfully framed his language as to avoid the statement of any direct falsehood, it being literally and exactly true that he understood that the note as written was not good against the parish, and that he wished to alter it so as to make it good against the parish, he deceived and misled defendant, who confided in him, in that he did not state the material truth that he understood the note as written was good against him, Hull, thereby persuading defendant to consent to a change whereby he lost security against Hull, who was well known to defendant to be perfectly responsible, and to substitute therefor a paper security against a corporation known by Hull to be utterly worthless, besides obtaining temporarily with defendant the credit of that disinterested benevolence and self-abnegation which, so far as my observation has extended, has unhappily hitherto proved as rare in the official financial operations of officers of parishes, as it is consistent with the doctrines said corporations are designed to inculcate and illustrate."

And the justice of the superior court ruled, as matter of law, on the foregoing findings of fact:

I. That the alteration of the note was material, and changed the note from a personal note of Hull to a mere parish note.

II. That Hull's conduct amounted, on the facts and findings, to legal fraud, so far as it is a question of law.

III. That defendant's consent to said material alteration having been obtained from him by fraud of Hull is void as between defendant and Hull, and would afford Hull no defense to a suit by defendant against him on the note.

IV. That inasmuch as defendant did not communicate the fact of such material alteration to plaintiffs, and plaintiffs never, in fact, had any knowledge thereof until after payment of the $372, Nov. 28, 1870, plaintiffs were thereby allowed by defendants to pay the same under a mistake of material facts, which were known to defendant and unknown to plaintiffs.

V. That the alteration and the fraud both being unknown to plaintiffs when they paid defendant's attorney the $372, plaintiffs are entitled to receive back the same in this action with interest from the date of the writ.

VI. And I ruled at the trial, at defendant's request, that evidence offered by plaintiffs to the effect that a suit had been commenced by them against Hull since the payment of the $372 by plaintiffs to defendant's attorneys, and before the bringing of this suit upon the note in question, had been entered "Neither party no further action to be commenced for the same cause" on the docket of this court after the discovery of the facts disclosed in this suit, prior to the bringing of this action, was inadmissible, and it was excluded. And upon the requests desired by defendant's attorney in matter of law, I rule, (1) That the note was originally, and before alteration, the personal note of John T. Hull. (2) That as altered it expresses no personal liability of Hull, but only a parish liability. (3) That although Carpenter, by proof of fraud on Hull's part in obtaining defendant's consent to the alteration, may, in a suit against Hull on said note, be able to defeat the

effect which Hull designed, viz., Hull's release from personal liability thereon, yet this fact does not of itself constitute a defense to this action. (See rulings III and IV.) (4) That a previous return or tender of the note was not essential to the commencement of this suit. (5) That plaintiffs are entitled to recover back the entire amount which they were required to pay defendant's attorney Nov. 28, 1870, including the $12.00 costs. (See ruling V.)

"After hearing the evidence and arguments of each party, and considering the same, I decide that said defendant did promise in manner and form as said plaintiffs have declared against him, and I award damages in the sum of $384.96."

To the foregoing rulings in matters of law, numbered I, IV, and V, and 1, 2, 3, 4, and 5, the defendant excepted.

*Thomas B. Reed*, for plaintiffs.

The alteration of the note was material, changing it from the personal note of Hull, to a mere parish note. *Sturdivant* v. *Hull*, 59 Maine, 172; *Ballou* v. *Talbot*, 16 Mass. 461. This action proper to recover back money paid under ignorance of facts, suppressed by payee. 1 Chitty on Pleading, 355; *Morton* v. *Marden*, 15 Maine, 46.

*Josiah H. Drummond*, for defendant.

The costs of suit paid by Sheridan should not have been included in the damages.

The change of note, made without plaintiff's consent, did not affect Hull's liability to them, if paid by them, and was, therefore, as to them, immaterial.

The note continued to be that of Hull, the change not affecting his liability at all. *Morell* v. *Codding*, 4 Allen, 403; *Long* v. *Colburn*, 11 Mass. 97; *Packard* v. *Nye*, 2 Met. 47; *Bradley* v. *Boston Glass Manf.* 16 Pick. 347.

The note should have been returned to defendant before suit brought. *Martin* v. *Roberts*, 5 Cush. 126; *Tisdale* v. *Buckmore*, 33 Maine, 461.

APPLETON, C. J. Upon the note, as originally signed, the maker, Hull, was personally liable. *Sturdivant* v. *Hull,* 59 Maine, 172.

The note, while in the hands of the indorsee, was allowed, with his consent, by the maker. But the presiding justice found that such consent was obtained by the fraud of the maker. It seems that the holder of a bill cancelled by mistake can recover against prior indorsers. So, if the cashier of a bank, through mistake, cancel a note due to the bank, it does not affect the right of the bank to recover. 2 Parsons on Notes and Bills, 564. So, if the alteration were fraudulently made, the party committing such fraud will not be permitted to take advantage of it to the injury of the holder.

But the alteration of a note by the maker, after its indorsement, if material, and without the consent of the indorsee, discharges him. *Waterman* v. *Vose,* 43 Maine, 504.

The alteration in this case was material. As the note was, when indorsed, the maker was personally liable. The note as altered was signed by John T. Hull, treasurer for St. Paul's Parish, duly authorized. The meaning of the parties is to be gathered from the note itself. The note is signed by the treasurer, for St. Paul's Parish. To do this, he was duly authorized. The parish must be bound by the act of its treasurer, which was duly authorized and which was for the parish. Signing for the parish, he contracts in their behalf. In *Morell* v. *Codding,* 4 Allen, 403, the note was signed by certain individuals without their describing themselves as committee, or that their signature was for the Baptist Church in Lee. The signers in the body of the note say " we the prudential committee for and in behalf of the Baptist church in Lee, agree to pay," etc. " We are brought to the single inquiry," says Dewey, J., "whether the words ' for and in behalf of the Baptist church in Lee,' found in the body of the note, change its character. Had these words immediately preceded or followed the names of the signers, with the ' by ' or ' for,' it would have been the promise of the Baptist church in Lee." In the present case

the altered note is signed "for St. Paul's Parish," and so to sign the treasurer was "duly authorized." The signing binds the parish.

The alteration, being material and without the knowledge or consent of the indorser, he is absolved from liability. As indorser, he paid the amount for which he was liable in entire ignorance of facts operating as his discharge. The money in the present case was paid under a mistake of facts and can be recovered back, for the plaintiff was in no fault. *Norton* v. *Marden*, 15 Maine, 45. The finding of the facts by the justice presiding is conclusive on the parties.

It is not necessary to consider or discuss the sixth ruling of the justice presiding, inasmuch as the counsel for the defendant has taken no exception thereto.

This is not the case of a rescision of a contract. It is simply to recover money paid under a mistake of facts and of legal right. It was enough that the plaintiff offered to return the note of Hull at the time of the trial. *Exceptions overruled.*

CUTTING, DICKERSON, BARROWS, and DANFORTH, JJ., concurred.